## MORGAN ET AL. *v.* JACKSON.

[No. 4,531. Filed January 8, 1904.]

APPEAL AND ERROR.—*Evidence.*—*Conflict.*—A verdict will not be set aside on conflicting evidence. *p. 171.*

SAME.—*Harmless Error.*—A cause will not be reversed because of an alleged erroneous instruction, where the answers to interrogatories affirmatively show that appellants were not harmed by the instruction. *p. 171.*

TRIAL.—*Interrogatories and Answers.*—*Conflict.*—In an action to recover the possession of certain promissory notes the following interrogatories, in substance, and answers were returned: ''Had not the payee of the notes pledged them to plaintiffs as collateral security? Answer: No.'' ''Did not the plaintiffs after the notes had been pledged to them keep said notes in their safe and under their con-

trol until August 17, 1901? Answer: Yes." *Held,* that the answers are not in conflict, since the latter answer relates to possession of the notes and not to the question of a pledge of them having been made. Wiley, P. J., dissents. *pp. 171, 172.*

From Marion Circuit Court (11,204); *H. C. Allen,* Judge.

Action by Louis J. Morgan and another against George W. Jackson. From a judgment for defendant, plaintiffs appeal. *Affirmed.*

*D. W. Howe, C. E. Averill* and *R. T. Byers,* for appellants.

*F. C. Groninger, Taylor Groninger* and *A. N. Grant,* for appellee.

ROBY, J.—Appellants brought their suit in replevin to recover possession of certain promissory notes executed by divers persons to John H. Davidson, of which they averred they were legally entitled to possession, and "of which notes defendant has possession without right, and wrongfully detains from the plaintiffs." Answer in general denial, trial by jury, verdict and judgment in favor of appellee. Errors assigned are that the court erred in overruling appellants' motion for judgment on the answers to interrogatories returned by the jury, and that the court erred in overruling their motion for a new trial.

Appellants' claim at the trial was that the notes in controversy had been pledged to them as collateral security for money loaned by them to the payee Davidson; that they were placed in possession of such notes; that, the maker of one of the notes desiring to pay it, they handed the package to Davidson at his request, in order that he might take out that note; that he was delayed in doing so, and left the package in his desk, from which it was taken by the appellee without right. Appellee claims that Davidson had induced him to go into the business with him, and to advance money to him, pledging the notes in controversy to secure the repayment of the sum so advanced; that his possession

of such notes was rightful, under the terms of such agreement; and that the same were not pledged to appellants, who he asserted never had possession of the notes in their own right.

The controversy was one of fact. It is not one where there was an absence of evidence upon either side of any material proposition involved, but one in which the evidence was conflicting and irreconcilable. The particular province of the jury is to settle such disputes, and no warrant exists for the setting aside of the verdict returned by it in the appellee's favor.

The court gave an instruction to the effect that the burden of proof rested upon the plaintiffs (appellants) to establish, among other facts, "whether the defendant wrongfully detains possession of said property from the plaintiffs." In *Krug* v. *Herod,* 69 Ind. 78, the court said: "The *gravamen* of appellee's complaint, in so far as the appellant was concerned, was the allegation therein that he had possession, without right, of the personal property sued for, and unlawfully detained the same from the appellee, in Montgomery county. This allegation was denied by the appellant, and the burthen of the issue was on appellee." To the same effect are: *Entsminger* v. *Jackson,* 73 Ind. 144; *Ridenour* v. *Beekman,* 68 Ind. 236. It is well established that the plaintiff in replevin must show the defendant to be in possession of the goods replevied. *West* v. *Graff,* 23 Ind. App. 410, 413. In the absence of other evidence, ownership or right of possession in the plaintiff, and possession held by the defendant, would undoubtedly require the inference and finding that the defendant's possession was wrongful; but such fact does not change the burden of proof, which remains with the plaintiff. But in any event there can be no reversal, for the reason that the answers to interrogatories affirmatively show that the appellants were not harmed by the instruction. Elliott, App. Proc., §642. Interrogatory number eight and its answer

were as follows: "Had not the said John H. Davidson, prior to August 17, 1901, pledged the notes in controversy to the plaintiffs as collateral security for the money before that time loaned by appellants to said Davidson? A. No." The eleventh interrogatory and answer were as follows: "Did not the plaintiffs, after the notes in controversy had been pledged to them by the said John H. Davidson, keep said notes in their safe and under their control until August 17, 1901? A. Yes." This interrogatory was evidently framed with the expectation that the answer to interrogatory number eight, preceding it, would be in the affirmative. The assumption contained in the interrogatory itself is not equivalent to a finding by the jury. The answer relates to possession of the notes, and not to the question of a pledge of them having been made. So construed, there is no conflict between the answers to numbers eight and eleven.

The plaintiff in replevin must recover upon the strength of his own title. *Miller* v. *Lively,* 1 Ind. App. 6; *Easter* v. *Fleming,* 78 Ind. 116. When it was established that the appellants had no title or right of possession to the notes in suit, that was an end to the case. *Miller* v. *Lively, supra.*

Interrogatory number eight was also conclusive against appellants upon their motion for judgment notwithstanding the general verdict.

Judgment affirmed.

Henley, C. J., Robinson and Comstock, JJ., concur. Wiley, P. J., dissents. Black, J., took no part.

## DISSENTING OPINION.

WILEY, P. J.—I can not concur in the conclusion reached in the prevailing opinion, and deem it my duty to express my views of the law in so far as they differ from those of my associates.

I concur in that part of the opinion which holds that ap-

pellants are not entitled to have judgment in their favor on the answers to interrogatories notwithstanding the general verdict, but I do not concur with the reasoning by which that conclusion is reached. It is my opinion that appellants were not entitled to have judgment pronounced in their favor on the answers to interrogatories, because such answers are inconsistent with each other. By their answer to interrogatory eight the jury found that Davidson did not pledge the notes in controversy as collateral security, while by their answer to interrogatory eleven they found that the notes were so pledged. The construction put upon interrogatory eleven and the answer thereto, as expressed in the opinion, is, in my judgment, not warranted. By the interrogatory the jury were asked, in substance, whether or not plaintiffs, after the notes in controversy had been pledged to them, did not keep them in their safe and under their control until August 17, 1901. To that interrogatory the jury answered, "Yes." Thus it appears, according to my views of the two interrogatories, that they are contradictory and inconsistent, for the reason that one of them is to the effect that the notes were not pledged, and the other that they were so pledged.

While the prevailing opinion states in brief the material facts disclosed by the evidence, I think it is important that I state in this dissenting opinion the facts as I have gleaned them, and understand them, from the record. By doing this, I feel that I can more clearly express the views that I entertain of the law questions involved. As I understand the facts they are as follows: The property in controversy consisted of a number of promissory notes payable to one Davidson. Appellants are lawyers, and had their offices in the Lombard block, in Indianapolis. Davidson was the state agent of an insurance company, and, by an agreement with appellants, occupied one of their rooms, in which he kept his private desk. Appellee was an employe of the company of which Davidson was the state agent, and oc-

cupied an office in the same building on the same floor. The notes in controversy were given by divers persons as premiums for insurance and were payable to Davidson. Appellants base their right to recover upon these facts, viz. : That Davidson became indebted to them for money loaned, and pledged to them as collateral security these notes. It is their theory that these notes were all in an envelope when delivered to them, and that, under their agreement with Davidson, they were to be kept in their safe in their private office, and that when any of the payors wanted to pay a note or notes, or make payment thereon, the same should be given to Davidson for that purpose, and no other, and thereupon the package was to be returned to them; that Davidson called for the package one day to get a certain note upon which the maker desired to make a payment; that it was delivered to him by one of the appellants opening the safe and taking out the package and handing it to him, with the express agreement that when such payment was made the note was to be again placed in the package and returned to the appellants, to be placed again in their safe; that by the time Davidson found the note desired, appellant Louis J. Morgan, who got the package from the safe, had his attention called to some other matter, and Davidson placed the notes in his own desk, in the same room where the safe was kept. Soon thereafter Davidson was taken sick and went home, and remained there for several days; appellants in the meantime supposing that the package had been returned to the safe. During Davidson's sickness and absence from the office, appellee, without the knowledge or consent of appellants or Davidson, took the package of notes out of his desk, and into his own possession. As soon as appellants found that appellee had taken the notes, they demanded their return to them, which demand was refused. Appellee's claim to the notes rests upon the ground that, under a contract with Davidson, he loaned him various sums of money; that some, but not

all, of the notes in controversy were then on hand, and
that it was agreed that they should be held as appellee's
security for the payment of the amount loaned, but they
were turned over to Davidson to be placed in appellant's
safe for safe-keeping; that it was also agreed between
Davidson and appellee that the notes subsequently re-
ceived in the course of the insurance business should be
turned over to appellee for collateral security, and like-
wise be placed in appellants' safe.     There was no memo-
randum attached to the notes, or anything to indicate that
appellee had any claim, interest, or lien in or on them,
and appellants did not have any knowledge or notice that
he did.    It is not denied that appellee took the notes out of
Davidson's desk in his absence, and without the knowledge
or consent of appellants.

In their motion for a new trial appellants allege error of
the trial court in giving, in refusing to give, and in modi-
fying certain instructions.    Appellants do not aver or claim
ownership of the property in controversy, but found their
action upon their right to its possession.    Upon the ques-
tion as to the right of possession the evidence is conflicting.
In instruction number six, given by the court on its own
motion, the court attempted to inform the jury as to the
burden of the proof on the question of appellants' right of
possession, and as to whether appellee's possession was
wrongful.    While other matters are embraced in the in-
struction, they need not here be mentioned.    The latter
part of the instruction is as follows: "It therefore becomes
important for you to determine from the evidence whether
in fact there was an actual delivery of the notes in question
to plaintiffs  *  *  *  for the purpose of securing a debt
owing from said John H. Davidson to said plaintiffs, and
if you find that said John H. Davidson was indebted to
plaintiffs, and you should further find that there was an
actual delivery of the notes in question to said plaintiffs for
the purpose of securing such a debt, then it will be your

Morgan v. Jackson.

duty to determine whether said plaintiffs retained such possession of said property in themselves; and then, if you so find, it will be your duty to determine further whether the defendant wrongfully detains the possession of said property from the plaintiffs. The burden rests upon the plaintiffs to prove all of said facts by a fair preponderance of the evidence to entitle them to a verdict in this cause." It is the latter clause in the instruction that appellants especially assail as an erroneous statement of the law. The question is fairly presented as to how far a plaintiff in a possessory action must extend his evidence to entitle him to recover. If, as in this case, the action is based on plaintiff's right to possession alone, he must not only prove by a fair preponderance of the evidence such right, but must go farther, and assume the burden to show that the defendant's possession is wrongful, then the instruction is a correct exposition of the law.

Cobbey, Replevin (2d ed.), §84, says: "Where on the trial the plaintiff shows peaceful possession in himself prior to the taking by the defendant, he has gone far to establish his right to the property, and the burden is on the defendant to show that his taking was rightful." The following authorities support the text: *Shomo* v. *Caldwell,* 21 Ala. 448; *Robinson* v. *Calloway,* 4 Ark. 94; *Sprague* v. *Clark,* 41 Vt. 6; *Dixson* v. *Thatcher,* 14 Ark. 141; *Warder* v. *Ingli,* 1 S. D. 155, 46 N. W. 181; *Anderson* v. *Gouldberg,* 51 Minn. 294, 53 N. W. 636.

In Abbott, Trial Evidence, 688, 689, it is said: "The quiet and peaceable possession by plaintiff of the property, at the time of seizure, is *prima facie* evidence of his title, and throws the burden on defendant of proving the contrary. Plaintiff must prove that he had a legal or equitable right to immediate possession at the commencement of the action, and this is enough. Right to possession and dominion of the goods for the time is all that is essential." *McCurdy* v. *Brown,* 1 Duer 101; *Rogers* v. *Arnold,* 12 Wend.

Morgan *v.* Jackson.

30; *Dodworth* v. *Jones,* 4 Duer 201; *Rockwell* v. *Saunders,* 19 Barb. 473; *Frost* v. *Mott,* 34 N. Y. 253.

In New York it has been held that a right to possession by virtue of a lien is enough. *Baker* v. *Hoag,* 7 N. Y. 555, 59 Am. Dec. 431. In *Schulenberg* v. *Harriman,* 21 Wall. (U. S.) 44-59, 22 L. Ed. 551, it was held that the admitted quiet and peaceable possession of the property by the plaintiffs at the time of the seizure was *prima facie* evidence of title, and threw the burden upon the defendant of establishing the contrary.

The rule is laid down in 20 Am. & Eng. Ency. Law, 1055, that "If the plaintiff shows a *prima facie* right to the possession of the property, he should obtain a verdict, unless the defendant prove a better title."

The case of *Ingersoll* v. *Emmerson,* 1 Ind. 76, was an action in replevin to obtain possession of a canal-boat. After reviewing the evidence on the part of the plaintiffs the court reached the conclusion that they had made a *prima facie* case, and said: "Having shown a *prima facie* right to the possession of the boat, the verdict should have been in their favor, unless the defendant proved that he had a better title."

*Morris* v. *Danielson,* 3 Hill (N. Y.) 168, was an action in replevin to recover possession of some horses. The plaintiff proved that just before the taking he was in possession, and the court said: "When the plaintiff had proved that the defendants were found taking away and disposing of his property, of which he had just before been in possession, it was enough to cast the burden on the defendants of showing how they came to possession of the property."

It would seem from the authorities that in a possessory action a plaintiff has done all that the rules of evidence require of him when he has shown that he was entitled to the possession (if, as here, he relies alone on his right to pos-

session), and hence he is not required to go farther, and show that the taking and possession by defendant were wrongful. It is hard to conceive of a contest between two litigants, both claiming the right to possession of property, how such right could exist in both. If plaintiff makes a *prima facie* case of his right to possession, possession in the defendant, as a legal conclusion, must be wrongful; and hence, to defeat the action, he must prove a better right, or a right in a third person. This burden is on him, and not on the plaintiff. True, the plaintiff must recover by virtue of his own title, and not on the weakness of his adversary's title, but in the first instance he is only required to make out a *prima facie* case. If the rule were otherwise, he would have to assume the burden, not only of himself, but of his adversary. It is important in this connection to determine the legality of appellants' right to possession. The theory upon which they claim a right to possession has already been stated. The notes in controversy were pledged to them as collateral security for a loan.

Jones, Pledges, §4, in making a distinction between a pledge and a chattel mortgage says: "1. It [a pledge] may be constituted without any contract in writing, merely by the delivery of the thing pledged. 2. It is constituted by a delivery of the thing pledged, and is continued only as long as the possession remains with the creditor. 3. It does not generally pass the title to the thing pledged, but gives only a lien to the creditor, while the debtor retains the general property." Many authorities are cited by the author, which we refer to.

There can be no question, under the law, but that Davidson, the payee of the notes, could pledge them to appellants by delivery. The evidence makes a strong *prima facie* case that he did this. If such pledge was made, appellants, under their contract with Davidson, did not lose their rights as pledgees by temporarily handing him the notes to take one out upon which a payment was to be made, and

when so made the package was to be returned to appellants, and again lodged in their safe. The instruction I have had under consideration did not correctly state the law, for it told the jury, in effect, that appellants were not only required to make out their own case, but that they must go farther and show that appellee's possession was wrongful.

Instruction number eight, given by the court on its own motion, is attacked. By that instruction the court told the jury that if they should find that the notes were put in appellants' safe for safe-keeping, and were not intended to pass from the control of Davidson and the defendant, or either of them, and that Davidson and the defendant, or either of them, were permitted to retain control of the notes and use them in their business by appellants, that such facts would not constitute a pledge of the notes to appellant, and would not give them a right to the possession, and in such event the jury should find for the appellee. That part of the instruction complained of is where the court tells the jury that if they find that Davidson and the appellee, or either of them, were permitted by appellants to retain control of the notes and use them in their business, then it would not be a pledge, etc. It is urged that that part of the instruction is erroneous, because it was not relevant to the issues or pertinent to the facts. It is asserted that there is not a particle of evidence which tends to show that the appellants ever permitted Davidson or appellee to retain the control of the notes and use them in their business. In fact, appellants claim that they had no knowledge that appellee ever claimed or had any interest in the notes. I have searched the record in vain to discover any evidence tending, even in the remotest degree, to establish the fact that appellants, after the notes were pledged to them, ever permitted Davidson or appellee "to retain control of the notes and use them in their business." These notes were kept in appellants' safe, which had an outer and inner door. Neither Davidson nor appellee had access to the safe, and

could not get the notes except at the pleasure of appellants. It is the established law that instructions should be relevant to the issues and pertinent to the evidence, and if an instruction is given concerning a fact or set of facts to which no evidence has been adduced it will be reversible error unless it clearly appears that the party affected was not harmed thereby. *Hanes* v. *State,* 155 Ind. 112; *Reed* v. *State,* 141 Ind. 116; *Pelley* v. *Wills,* 141 Ind. 688; *Robinson* v. *State,* 152 Ind. 304; *City of LaFayette* v. *Ashby,* 8 Ind. App. 214; *Chicago, etc., R. Co.* v. *Butler,* 10 Ind. App. 244. In this case I can not say that appellants were not harmed. The instruction in its present form was erroneous, and should not have been given. For the same reason instruction number ten was erroneous.

Appellants timely tendered and requested the court to give the following instruction: "There is no mode under the law of this State, except by chattel mortgage, duly acknowledged and recorded, by which the owner of personal property retaining possession can give another a lien upon it that can be enforced against any person except the parties thereto." It is conceded that this instruction correctly states the law. The court did not give it as tendered, but embodied it verbatim in instruction number six, which I think was erroneous. The rule that it is not error to refuse an instruction where the same, or substantially the same, proposition of law is stated in another instruction can not control here, because the proposition of law embraced in the instruction tendered was embodied in an erroneous instruction.

Appellants also tendered the following instruction, which the court refused to give: "If you find that the plaintiffs had the rightful possession of the notes in controversy by virtue of a prior pledge thereof to them by said Davidson, and that while so having rightful possession thereof they delivered the package containing the same to said Davidson for the purpose, and only the purpose, of taking out one,

of said notes, and then returning the residue of said notes to plaintiffs, and that after said Davidson had so got possession of said package he placed the same temporarily in his desk, and that while so in his desk they were taken out by the defendant Jackson, during the absence of said Davidson, and without the knowledge or consent of either the said Davidson or of plaintiffs, then I instruct you to find for the plaintiffs as to all of said notes, except the one which said Davidson was so authorized to take out of said package." Appellee's counsel concede this instruction to be correct, but say that appellants' were not harmed by the refusal to give it, because in instruction number ten the court gave the same instruction in almost the identical language. This is true, but the court, as I stated above, embodied matter not pertinent to the issues, and hence it was erroneous.

It would seem that the authorities in this State, on the question of what a plaintiff is required to prove in a replevin suit, are in conflict, but, in my judgment, the weight of authority and the better reason are supportive of the views here expressed. To illustrate: As a matter of pleading, a plaintiff in a suit upon a note must aver, among other things, that the note he sues on is due and remains unpaid; but when he introduces the note in evidence, in the absence of a plea of *non est factum*, he has made out a *prima facie* case. He does not have to prove that it is due or unpaid. He is not required even to prove nonpayment in the face of an affirmative answer averring payment. The burden is upon the defendant. So in an action for trespass on real property, the plaintiff must allege that he was entitled to possession, and that the defendant wrongfully entered. And yet the plaintiff has made out a *prima facie* case, and is entitled to a verdict, when he has shown he was in rightful possession, unless the defendant overcomes such *prima facie* case by competent evidence. Two persons with contending interests, as here, can not, in any

legal sense, both be entitled to the possession of any specific personal property at one and the same time.

True, a plaintiff in a possessory action must recover by the strength of his own title, and not upon the weakness of his adversary's. Here plaintiffs were required to recover by the strength of their right to possession. Appellants and appellee were not both entitled to possession. In my judgment appellants were entitled to recover when they showed their right to possession, unless appellee showed a better right in himself or a third person. It must necessarily and logically follow that appellee's possession was wrongful, and appellants' possession was rightful. I do not wish to be understood as applying this argument to the conflicting evidence, but to the instructions, which, in my judgment, erroneously declared the law. In any event, under the theory of appellee, he had no interest whatever in the notes. He testified that after Davidson pledged the notes to him, he turned them over to him to be placed in appellants' safe. Under the authority above cited, this would not constitute a pledge, and would not give him any right, interest, or lien on the notes.

Counsel for appellee, in oral argument, while not conceding any error, invoked the elastic provisions of §§401, 670 Burns 1901, that any error must be disregarded which does not affect the substantial rights of the adverse party, and that a judgment shall not be reversed where it shall appear to the court that the merits of the case have been fairly tried and determined in the court below. Wide latitude is given appellate courts by these statutes, and they are often referred to for the affirmance of judgments, even where error is apparent from the record; but, considering the entire record before us, in view of the errors pointed out, I am not prepared to say that the cause was fairly tried and determined, or that the substantial rights of appellants were not affected. On the contrary, it appears to me, from the whole record, that the cause was not fairly tried, and

that the substantial rights of appellants were materially affected.

The judgment should be reversed.